UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SARA JO ANN SPRINGER,       )<br>    Plaintiff,                              )<br>                                                )<br>    v.                                         )<br>                                                )<br>ANDREW M. SAUL,                       )<br>Commissioner of the Social Security  )<br>Administration,                             )<br>    Defendant.                            )  | CAUSE NO.: 2:19-CV-197-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Sara Jo Ann Springer, and Plaintiff's Brief [DE 12], filed October 15, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and benefits awarded, or alternatively, that the case be remanded for further proceedings. On November 26, 2019, the Commissioner filed a response, and on December 11, 2019, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.     Background**

On May 6, 2014, Plaintiff filed an application for benefits alleging disability beginning April 21, 2014. Plaintiff's application was denied initially and upon reconsideration. On January 4, 2017, Administrative Law Judge ("ALJ") Kevin Vodak held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On April 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

1

2. The claimant has not engaged in substantial gainful activity since April 21, 2014, the alleged onset date.

3. The claimant has the following severe impairments: cervical spondylosis, fibromyalgia, rheumatoid arthritis, chronic obstructive pulmonary disease (COPD), hypertension, diabetes mellitus, obesity, depressive disorder, post-traumatic stress disorder (PTSD) and borderline personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions. She can only operate foot controls bilaterally. She can frequently handle, finger, and reach overhead bilaterally. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She would require lighting limited to an office-like setting. She should never be exposed to unprotected heights or moving mechanical parts. She can occasionally be exposed to humidity, wetness, dusts, orders, fumes, pulmonary irritants, extreme cold and extreme heat. She should only be exposed to a moderate level of noise, as defined in the Selected Characteristics of Occupations (SCO). She is able to understand, remember and carry out simple, routine and repetitive tasks. She is able to frequently interact with supervisors and coworkers and occasionally interact with the public. She is able to engage in no more than occasional decision-making and be exposed to no more than occasional changes in a job setting.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual

>       functional capacity, there are jobs that exist in significant numbers in the
>       national economy that the claimant can perform.
>
> 11.   The claimant has not been under a disability, as defined in the Social Security
>       Act, at any time from April 21, 2014, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III.   Analysis

Plaintiff argues the ALJ erred in finding that Plaintiff's impairments did not meet or

4

medically equal a listing. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The determination of whether a claimant suffers from a listed impairment comes at steps two and three of the ALJ's analysis. Step two requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id*.

Plaintiff argues that her fibromyalgia and rheumatoid arthritis met or medically equaled a listing. There is no listing that corresponds directly to fibromyalgia, so ALJs are instructed to "determine whether [fibromyalgia] medically equals a listing . . . or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p, 2012 WL 3104868 (July 12, 2012), at *6; *see also Molly K. v. Saul*, No. 18 C 3415, 2019 WL 3857885, at *7 (N.D. Ill. Aug. 16, 2019) (holding that the ALJ must "address which listing she considered for a fibromyalgia equivalency analysis"). In this case, although the ALJ found that the record "does not conclusively reveal whether or when the claimant was diagnosed with fibromyalgia," he found it to be a severe impairment, and explicitly considered Plaintiff's fibromyalgia in assessing Listing

5

14.09 (Inflammatory Arthritis), *see* AR 20-21. To the extent Plaintiff argues the ALJ failed to adequately acknowledge fibromyalgia in the listing analysis, the argument does not require remand.

Plaintiff specifically argues that the ALJ's analysis of Listing 14.09 was not supported by substantial evidence. A claimant can meet Listing 14.09 by showing that she has arthritis causing "persistent inflammation or persistent deformity of . . . [o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively." 20 C.F.R. 404, Subpt. P, App. 1, § 14.09(A). An "inability to perform fine and gross movements effectively" means an "extreme loss of function . . . that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" such as reaching, pushing, pulling, grasping, and fingering. *Id.*, § 1.00(B)(2)(c).

Plaintiff testified that she had difficulty handling and gripping because her hands, particularly her right hand, have begun to "completely curl." AR 139-140 ("I do have some mobility in my first finger and my [of the left hand], but the [ ] right hand has all four fingers and my thumb like touching each other and completely curled in."). Consultative examiner Dr. R. Jao measured "decreased grip strength" with "poor fine finger manipulative abilities . . . unable to button, zip, and pick up coins." AR 589; *see also* AR 395 (examination revealing decreased grip strength, tissue swelling and puffy joints), 594-95 (photographs included by Dr. Jao documenting "crippling to fingers").

The ALJ found that the record "fail[ed] to establish persistent inflammation or persistent deformity of . . . [o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively," but did not provide any further analysis of Listing 14.09 beside reciting the factors. Given the evidence of Plaintiff's difficulty gripping and

6

handling, this analysis was inadequate. Although the claimant bears the burden of proving that her condition meets the criteria of a listing, *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006), the ALJ's decision must "offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). By simply listing the factors, without explaining why Plaintiff did not meet those factors, the ALJ failed to provide adequate analysis or the required logical bridge to her conclusion. *O'Connor-Spinner*, 627 F.3d at 618.

Although the ALJ addressed Plaintiff's joint pain and arthritis in further detail at step four, these findings do not clarify the analysis. The ALJ explicitly found that "the claimant's objective evidence sufficiently establishes her joint pain," AR 24-25, but subsequently found that her "treatment response and lack of treatment follow through discounts her allegations of severe, persistent and limiting spinal and joint disorders." AR 25.

To the extent these findings were intended to establish that Plaintiff did not have "an extreme loss of function" in gripping and handling activities, the ALJ failed to build the required logical bridge. Plaintiff underwent a variety of treatments for her rheumatoid arthritis, including medications, gels, injections, and various procedures on her spine, which the ALJ summarized as alleviating "some" of her symptoms. But the ALJ did not cite to any evidence showing that these treatments addressed Plaintiff's gripping and handling. Although Plaintiff described a lidocaine gel as a "miracle treatment," that was two days after she got her arm trapped in a car door, after which she could not move her right hand and her pain was a 12 out of 10. *See* AR 547-49. Again, there was no link in the record between this treatment and her gripping and handling.

Addressing Plaintiff's treatment plan, the ALJ noted that "it does not appear" that Plaintiff

7

pursued a prescribed program of physical therapy, and she declined surgical intervention on her spine. Both statements are supported by the record – *see* AR 430, 432 – but if lack of treatment is to be used against a claimant, the ALJ is required make a determination about whether the lack of treatment is justified and develop the record accordingly. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (Mar. 16, 2016), at *8; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p). Although the ALJ explained his conclusions as to Plaintiff's failure to follow recommendations for some of her other impairments, there was no investigation of why Plaintiff did not pursue physical therapy or spinal surgery, or whether these treatments would have addressed Plaintiff's gripping or handling.

The ALJ also made a general finding that many of Plaintiff's symptoms, including her joint pain, swelling, and reduced range of motion, were offset by treatment and "generally normal physical examination findings," including numerous citations to the record. AR 27. But while the records he cited may have supported that conclusion as to her other ailments, they did not build a logical bridge to the same conclusion as to her hand issues specifically. *See, e.g.,* AR 395 (examination revealing decreased grip strength, tissue swelling and puffy joints), 411 ("persistent pain with numbness and weakness in the lower extremities"); 519 (physical exam finding "joint swelling [bilateral] . . . hands and wrists affecting her ability to make closed fists"). The ALJ either

8

failed to adequately analyze the record on this issue, or else "cherry-pick[ed] facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). For the same reason, the ALJ's analysis does not adequately support his finding in the RFC that Plaintiff could "frequently handle, finger, and reach overhead bilaterally." These errors require remand.

Plaintiff requests remand with an award of benefits. An award of benefits is appropriate if all factual issues have been resolved and the record supports a finding of disability. *Briscoe*, 425 F.3d at 356. In this case, although the ALJ did not sufficiently analyze Listing 14.09 and did not adequately support his conclusion that Plaintiff could handle and finger "frequently," the record does not conclusively show that Plaintiff was "[unable] to perform fine and gross movements effectively" with both upper extremities, as would be required to meet Listing 14.09(A)(2). Moreover, none of the doctors who examined Plaintiff concluded that she could not work. Under these circumstances, remand for benefits is not appropriate. *See Allord v. Astrue,* 631 F.3d 411, 417 (7th Cir. 2011) (affirming reversal for re-hearing, rather than an award of benefits, where "contradictory inferences could be drawn from the physicians' testimony"); *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal").

On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's fibromyalgia and rheumatoid arthritis meets or medically equals Listing 14.09. If the ALJ determines that Plaintiff's impairments do not meet or medically equal the criteria of a Listing, the ALJ must draw a logical bridge from the evidence in the record to the conclusions about Plaintiff's RFC. The ALJ is reminded that, in considering subjective complaints of pain, he must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence," and "explain"

which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 WL 1119029 at *6, *8.

**IV.     Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief [DE 12], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 24th day of August, 2020.

                                              s/ John E. Martin
                                              MAGISTRATE JUDGE JOHN E. MARTIN
                                              UNITED STATES DISTRICT COURT

cc:     All counsel of record